Our next case is PerDiemCo v. NexTraq, 2024-16-21. Good morning, Ms. Addy. Good morning, Your Honors. Let's wait until the opposing counsel sees themselves. We have a lot to unload. Please proceed. Thank you. Respectfully, I hope to have a few seconds to make a brief statement before we begin oral argument. Brief statement, yes. Thank you. I would like to acknowledge my law partner, Benjamin Capell. He passed away on Saturday at the age of 33 after battling an aggressive cancer. Mr. Capell was a member of the Federal Circuit Bar, and he represented PerDiem in these appeals. He would have been here today to argue his first cases before this Court, and I wish to acknowledge his contribution and the remarkable legal mind that we lost far too early. Thank you. Our condolences. Thank you, Your Honors. Please proceed. Thank you. Good morning. This is a Rule 12 case, and at Rule 12 the District Court erred by resolving technology disputes against PerDiem while disregarding the patent claim's specific architecture and ordered combination. Once the claims are analyzed as written, they recite a concrete network arrangement, not a generalized information processing. Turning first to the Rule 12 factual allegations, the complaint alleged specific network arrangement and required separate administrative levels, privilege verification, group-based event and alert configuration, and access-controlled information sharing that are all directly tied from the complaint to the claims and the specification. And all that amounts to collecting, analyzing, and distributing information. And this is abstract? And the computer? No, Your Honor. The computers are conventional? Your Honor, the District Court said exactly that. It acknowledged our Rule 12 posture, but it failed to apply it and improperly reduce the claims to collecting, analyzing, and distributing information. Well, the problem with this case, as with so many that come before us, is that they go back to before the law changed. This goes back to 2006, and the law has changed. We now have to deal with all these abstract ideas or claims that are merely directed to abstract ideas. I do have a short response to that, which was going to be later in my argument, but in this case... You have 13 minutes. I know. In this case, the prosecution history continued until after Alice. And, in fact, the PTO evaluated these very claims and these limitations under 101, and that we disputed in our motion practice, but the District Court failed to analyze it or give it its Rule 12 credit. The problem with that response is that we've already affirmed the invalidity of many post-Alice PTO-issued patents for being directed to ineligible subject matter. And so what we've unfortunately learned is that there have been plenty of times where the PTO either can't or won't follow our precedent in this area. Well, Your Honor, I know a lot of those cases, and in this case it's a little different. First, because we are on this Rule 12 procedural bent, the court needed to address the factual allegations about the prosecution history. But more importantly, and specifically here, the prosecution history reflected that the PTO specifically evaluated the following limitations in the claim. Separated system and group administration, multi-level privilege verification, group-level configuration of zones, events, and alerts, and access control information sharing. And you can see that because there were amendments to the claims to add a lot of this detail. That's at 1308-09 of the appendix. And the patent owner's specific response to 101 is at 1315-1318. These all are the same architectural features that per diem relies on here to support eligibility. And at a minimum, the district court should have considered the Rule 12 ramifications, but it found that they were irrelevant. Well, you described those various features as architectural features suggesting that they are structural in nature. But it struck me that the claims are very heavy on function and light on structure. And that's one of the keys that we look to in the 101 area. Is the patentee claiming something functional that is not related to some novel structure that has been adopted and employed and recited in the claims? Where is it that you have structure that is different from the functions you're claiming to have performed? So, Your Honor, as we pled in the complaint, as the specification describes, the prior art systems used what was called a predetermined configuration. It couldn't be changed. And the claimed advance restructures that because it allows group-level configurations at various levels. It allows different administrators... But what does it do to allow that? What is the change that's made in the structure of either the software or the hardware that allows that to happen as opposed to simply saying, here's an idea that we'd like to implement. And the idea is that we're going to have flexibility where there was no flexibility before. And if you come up with something that affects flexibility, we'll sue you. Because the claims are very specific about how the first level of administrative privilege can affect the second level and how the second level of administrative privilege has specific controls that it can operate and change on the user groups and the people that are entering these user groups. Your Honor, this Court's precedent has held that you don't have to have specific hardware to be structural. But changes in a claimed software can be structural. And the reason these are structural is because the prior art system could not do this. It was incapable of it. It was a static system. And it could not have the various controls that allow the different levels, that allow the different permissions. I'm trying to also understand the nature of this level of administrative privileges, limitation, and why isn't that just simply assigning different levels of authority, of information access or management to different people, kind of in the same way that companies always have different levels and layers of employees that have different levels of access and management to different types of information. The spec, for example, talks about confidential, secret, top-secret status for different employees that permit them to have access to different types of information. So, in one sense, that's one way to think about these levels of administrative privileges. And, Your Honor, that is an analogy that you could draw. But we can't base a 101 determination on analogy. And you have to look at these structures and apply them within the confines of the other claim limitations. And the other claim limitations provide more specifics, and they are ordered in how they can be performed. And it's very particular in the claims. For example, the second administrator is able to apply these access codes and specify different users and change that around. And he's also able to specifically configure groups and events and zones. So, while that is an analogy, that does not resolve the abstractness because of all the other limitations in the claims that specifically require this structure. And because of the restructured arrangement, the group-level administration and sharing through separate administrative privileges and verifications meets NFISH's specific type of data structure that's designed to improve a way a computer stores and receives data. What about electronic communication? That opinion, which was at least similar to what's going on here. I believe that was about checking on the status of deliveries of items. And so, you're basically doing a location tracking scheme. And there's authentication information involved in that case. And so, why haven't these questions already been asked and answered? So, I believe, are you referring to electric power group? No, not electric power group. I'm sorry. It was cited in the cases. I think it's called electronic communication technologies. Versus shopperchoice.com? Right. So, Your Honor, in that case, the ECT involved a generic advance notification system. But here, the claims recite separated administrative layers that weren't present in ECT. And they provide these privilege verifications and configurable groups that weren't present in ECT. So, advance notification is maybe abstract, but the specific administrative tiers and layers and the configurable groups here get beyond that and deal with the structure of the claimed software. Your Honor, I can proceed to Alice Step 2. In Alice Step 2, which if you find for us, obviously, under Alice Step 1, we need not reach it. The claims recite the non-conventional ordered combination that also cannot be resolved against per diem at Rule 12. The inventive concept here lies in the ordered combination that requires these tiered administrative structures, the privilege verification, the group level configuration of zones, events, and alerts, and the access control of information sharing. All that has to be considered together as the ordered combination that govern how information is considered, verified, and shared within the system. And under BASCOM, an inventive concept arises from a non-conventional and non-generic arrangement of known conventional pieces. And that's precisely what we have here. The inventive concept lies not in the isolation of one thing or another, but in the combination of all these different aspects that were brought together in these claims. Additionally, Your Honors, under Rule 12, per diem, plausibly allege these arrangements were unconventional. For example, per diem allege that prior systems relied on system level configurations that were static. But the claimed architecture here and controlled group contribution is separate administrative layers and is not static but able to be configured. Those allegations are tied to the claims and specification, and at a minimum, they should plausibly establish an inventive concept sufficient to preclude Rule 12 dismissal. Ms. Addy, you're into your rebuttal time. You can continue or save it. I will reserve it. Thank you. Mr. Oliver. Good morning, and may it please the Court. The patents at issue claim concepts of organizing human behavior and activities in the context of sharing information, specifically location information, and they do so using generic computer components. At base, the claims involve simply using different levels of what is called administrative privilege. But that's nothing more than having a first administrator who decides who's going to be in a group, which humans are going to be in a group, and which human out of that group of humans is going to be charged with the role of being a second administrator. The second administrator simply determines who in that group gets alerts regarding information, those alerts pertaining to when a device crosses a specific boundary. As the specification makes clear, what is at issue here is just trying to cover structures of organizations, and the specification provides examples of the military, and specifically tracking assets on battlefields, corporate structures, specifically different roles within a company, and even, as acknowledged in the blue brief at 12, the structure of a family where a parent may want to know where a child is or when a child leaves school or a friend's house. In the context of the battlefield example, what these claims do is nothing more than an organizational structure for sharing information. There is someone who's in charge, it could be a general. There might be a lieutenant who's in charge of a specific platoon. And as the specification makes clear, there are simply here alerts to certain people who have a need to know, because it's classified or top secret, when certain assets are moving across a battlefield, when they cross a geographic line. Your point is, all this is done by software, right? Well, I think my argument would be, not only is it all done by software, but contrary to the arguments that are made, there is no indication in the specification of the specific software or structure of the software to be used. The Supreme Court has not indicated that all use of software is abstract. No, that's correct, Your Honor. The question is, is there an abstract idea here? And my point is, this is abstract in that it is basically the organization of human behavior and the sharing and management of information, both of which have been found to be abstract ideas under this Court's ruling, and the Court below correctly interpreted that case law and applied it here. Secondly, with respect to, is there anything more, those abstract ideas stated in very high-level functions are performed using generic computer components. There is no arrangement of those components that's specified. There is no structure of those components that are specified, nor is there any indication of a specific computer operation at a lower level that would indicate something more is going on, other than the top-level recitation of functions. For instance, the Claim 1 at issue here recites providing interfaces. It doesn't even specify what the interface might look like, how it would operate, what it needs to do, aside from just providing the generic context or communication of information, allowing something to enter what the patent refers to as an information-sharing environment. Now, on some of the arguments that were made, one thing that's been focused on in this argument is the idea of whether the rules are predetermined or not. And as is made clear in the briefing, as well as in the specification, that argument ultimately pertains to the idea of who programs the alert, who decides where the boundary is. And the argument is essentially that, well, previously it was done by someone who was selling the software, and now it's done by a user. But what is critical there is there's no dispute that it was done previously, and there's no difference for recitation claims that it's being done differently. It's just who does it? But that is simply not a technological innovation, nor is the idea of using different levels of administration. Different levels of administration, as the specification makes clear, is hierarchies in the military, hierarchies in a corporation, or even hierarchies in a family, whether it's a parent and a child. And that goes to, I believe, the argument that was made concerning second administrators. That's just layers of administration. These are human beings making decisions on what roles they will fill and what roles they will designate to another human being. With respect to the arguments that were raised concerning software being used, what is clear, looking at the claims as well as the specification, is there is no specificity as to how any software would operate. Often this court looks at the how. Great, you have a function of programming a computer to do X, but the question is not whether or not a computer can automate something that a human would have done previously using a radio or a cell phone and a list of people who have access to information. The question is, okay, you're automating something, but how do you do it? And what these claims lack is the how. There is no detail on how to program it, how to structure the computer, what underlying operations are being performed. And I'll note with respect to the step two arguments that were presented, they primarily, not only in the oral argument here today, but in the briefing, are just repetitions of the step one arguments. One is the idea that there are administrative privileges. But what is missing, particularly from the briefing, is any discussion as to how administrative privileges would be properly defined as a technological innovation. Again, administrative privileges, and I don't think it's disputed, is just assigning a role to one human being and assigning a different role to someone else. That is not a technological innovation, and I don't see anything in the briefing on appeal that suggests otherwise, nor do I see anything in the specification that suggests otherwise. What about the complaint? So with respect to the complaint, I believe the court was proper to... I don't think there is anything technological in the complaint, first, to answer the question. And I think the court was proper to do what it is supposed to do, and what courts are supposed to do is accept as true well-pleaded facts. What courts are not supposed to do is accept conclusory assertions and implausible assertions. What the complaint here does is exemplify both of those categories. In particular, some of the statements in the complaint are, and I'm right now looking at Appendix 357, Paragraph 48. The claims and the patents in suit are directed to patent-eligible subject matter. That is one of the relied-upon quote-unquote factual assertions in the complaint. But that is just a statement of the law, the issue to be decided by the court. It is not a specific well-pleaded fact concerning the underlying issues concerning Article 101. Another example can be found in the Appendix at 358, Paragraph 52, that states, Again, this is a conclusory assertion, and a court is not bound to accept conclusory assertions. And I'll give one other example in the category of implausible assertions. Specifically, the Appendix 359 at 58, Paragraph 58, says that the claims, and I'll quote, But the specification makes clear that that's exactly what the claims are directed to. In fact, the specification states in the Appendix at 77, Column 13, Line 29, that the claims and the alleged invention is directed to, and I'll quote, The specification makes abundantly clear that the subject matter is directed to organizing human activity, and specifically to information sharing among groups of people. Those types of assertions do not ultimately change the 101 analysis. And just because a plaintiff says in its complaint, my claims are patent eligible, a court is not bound to accept that legal conclusion absent well-played facts that would ultimately bear on the issues to be decided. Namely, do we have an abstract idea? Do we have any technological innovations that would differentiate what is claimed from what was done in the prior art at a technological level? And we simply don't have that here. Which claims of the seven patents were ruled to be ineligible below? Is it all of the claims, or is it just some of the claims? Certainly the opinion below vacillates a little bit talking about asserted claims versus the patents being ineligible, so there wasn't maybe precision in language. However, the complaint makes clear that the claims being asserted are at least one of each patent, and the motion was clear that it is challenged in the validity of each patent. There were claim charts that addressed example claims, and I think the judge sometimes focused on the example claims, but what was challenged in the motion was all claims of all patents. What was asserted in the complaint was at least one claim, so there was no limitation in the complaint that the claims being asserted are necessarily less than all of the claims. So based on that record, we believe all the claims of all the patents are covered by the decision below, absence of perhaps less than precise language below. Is that consistent with the district court's ruling on representative claims, i.e., did the district court say that those representative claims were representative of all of the asserted claims? Are all of the claims asserted and non-asserted in the patents at issue? I think the answer would be the same as what I just stated, and the reason I say that... I'm not sure how that... Yeah, well let me be clear. The courts indicated that the claims it relied upon of the 941 patent claim 1, as well as some other claims that were exemplary in the claim charts, were representative of all of the claims at issue. At issue? Yes. The ones that were asserted? Right. So that's where I go back to the complaint did not say here are the claims that are asserted and here are the claims that are not. The complaint said at least one claim of this patent and at least one claim of that patent. It did not limit in the first case, and there are companion cases here, in the first case it did not limit what claims were being asserted. What it did provide was claim charts with exemplary claims. The specifications are all the same, right? Specifications are all the same and the claims, I believe, are similar across all of those. And the appendix that was provided with the motion addressed all the claims across the patents. So absent some precise, maybe imprecise language below, we believe it's all claims of all patents. And the representative claims represented that. Are all these patents expired now? That's a good question, Your Honor. I think the priority date is... The priority date goes back to... The first non-provisional was January 06. Yeah. So the priority date goes back there. I have not checked on term extension as to whether or not any of them would still be alive, but it's close. Absent any further questions, I won't take up too much of the Court's time. Thank you, Counsel. Ms. Addy has some rebuttal time. Thank you, Your Honor. A couple of quick points. First, my colleague relied a lot on the specification and when he went to the claims, he extracted specific elements out. He never looked at the claims as an ordered combination, which is required under ALICE Step 2. Secondly, if you look at the complaint at paragraph 55, which my co-counsel did not read to you, it talks about resolving technical problems and it says they allow remote, located parties to interact in computerized environment, which, on information and belief, is exclusively implemented by using computer technology and cites to the specification. So we did challenge that human issue. In addition, if you look at specifically Claim 1 of the 941, that claim is not directed to human activity. That claim is limited to server activity. Humans couldn't do it because humans can't communicate with remote devices in real time. Now finally, we raised the representative claim issue and that is a very interesting issue because NextTrack, the district court held, failed to establish representative claim at all. That should have been the end of the inquiry. Under mobile acuity, it was NextTrack's responsibility to do so and it didn't. When NextTrack failed its burden, that should have been it, but the court did its own analysis and that analysis relied on the common specification, which we know is not appropriate and failed to consider specific claim differences. We did not have to raise those because that was NextTrack's burden to do and NextTrack failed to do that to begin with. So as Weissner explains, Your Honor, claims sharing the same specification are not necessarily directed to the same subject matter for 101 purposes. The differences have to be specifically considered and they were not here. So there is a reversal on the representative claim issue as well. Finally, with respect to all the claims, we only asserted limited claims. The fact that they included in their motion a table that the judge disregarded of all the claims does not render all the, you can't invalidate claims that were never asserted. And I think if you look at the judge's order, he bases it on the claims in the complaint and he invalidates claims based on that. So no, all of the claims were not invalidated because they were not all raised here. I see my time is up. Thank you. Thank you, counsel. Case is submitted.